BAILY AND WAGGONER, CO-ADMINISTRATORS, PLAINTIFFS,
*v.* MCELROY, ATTORNEY GENERAL ET, DEFENDANTS.

Probate Court, Warren County.

No. 3433. Decided July 25, 1961.

RAY, J. This matter came on to be heard on the 23'' day of June, 1961, as a result of a Motion filed by H. Z. Gray and Paul N. Herdman, Attorneys for Francis T. McCurdy, who moved that the Attorney General be removed as a party defendant in this action due to the fact that he is not a proper party to the action.

It might be well at this point to give a brief history of the development of this entire case for the benefit of the record.

The Will of the late Rice P. Steddom was admitted to probate in this Court on April 26, 1950. At that time, Judge Ralph H. Carey, now deceased, was Probate Judge for this County. After said Will was admitted to probate the following actions were filed.

On October 19, 1950, a suit was filed in the Court of Common Pleas, Case No. 19075, contesting said Will. On the same date Case No. 19076 was filed in the same Court asking for a construction of the Will. The plaintiff in both cases was Francis

T. McCurdy, alleged to be the sole heir at law of Rice P. Steddom, deceased.

The suit contesting the Will resulted in the Court of Common Pleas ordering the question of the validity of the Will being put in issue. A jury found that the Will was the Last Will and Testament of Rice P. Steddom. An Entry to this effect was filed on or about October 13, 1955.

The suit for the construction of the Will was dismissed, with prejudice, by the plaintiff, McCurdy, at the cost of the defendants, on October 13, 1955.

On that same date, Charles J. Waggoner and Emmor D. Baily, Administrators With the Will Annexed of the Estate of Rice P. Steddom, deceased, filed an application in the Probate Court of this County requesting authority from the Court to pay Francis T. McCurdy the sum of Fifty Thousand ($50,-000.00) Dollars in settlement of his suits above referred to. The Probate Court ordered the Administrators W. W. A. to pay the sum of Fifty Thousand ($50,000.00) Dollars to Francis T. McCurdy and the suit to construe the Will was dismissed in the Court of Common Pleas.

No more action, with the possible exception of accounts filed by the Administrators With the Will Annexed, resulted in this estate until October 10, 1960. During that time Judge Carey had passed away and the present Judge had assumed the Probate Bench.

On the 10th day of October, 1960, an Application was filed in the Probate Court by Francis T. McCurdy, seeking a construction of the Will of Rice P. Steddom. Notice was served on the Co-Administrators W. W. A. and through their attorneys, C. Donald Dilatush and Marvin E. Young, a Motion to Quash Service was filed. The Court has never rendered a decision on that Motion, and the question has since become moot.

About that same time the attorneys for the Co-Administrators W. W. A. filed an action in the Court of Common Pleas of this County asking for construction of the Steddom Will. By agreement of all parties, this suit was subsequently dismissed and the Co-Administrators W. W. A., through their attorneys, brought the action for the construction of the Will in the Probate Court. This resume brings us to the present matter, the motion to remove the Attorney General as a party.

Despite all the Code sections cited by the Attorney General, and the Court's own feeling, the Court cannot overlook the very specific and definite language of Section 109.23, Revised Code.

Section 109.23, Revised Code. As used in Sections 109.23 to 109.33, inclusive, Revised Code, "charitable trust" means any fiduciary relationship with respect to property arising as a result of a *manifestation of intention to create it*, and subjecting the partnership, corporation, person, or association of persons by whom the property is held to equitable duties to deal with the property for any charitable, religious or educational purpose. *There are excluded from this definition and from the operation of such sections, trusts until such time as the charitable, religious or educational purpose expressed in such trust becomes vested in use or enjoyment.* Such sections do not apply to charitable, religious and educational institutions holding funds in trust, or otherwise exclusively for their own purposes nor to institutions created and operated as agencies of the state government or any political subdivision thereof.

This Court cannot see that there has been any vesting in use or enjoyment of this trust. No Trustee has ever been appointed, although this Will was admitted to probate in 1950, and contained instructions for the appointment of a Trustee. (A copy of said Will will be attached to this opinion.)

Section 2307.131, Revised Code, has been mentioned in defense of the Attorney General's position, but the Court does not see how this section pertains to the facts in the case at hand. The Attorney General further cited Section 340, General Code, in support of his contention. We find that this section was changed to Section 109.11, Revised Code, and repealed in 1953. The current Section 109.11, Revised Code, deals with "Canal Land Disputes."

Several cases have held that the Attorney General is not a necessary party to a will contest case, and numerous citations to cases ruling both ways on the question of the will contest were presented. The Court does not find in any of the briefs any interpretation of the language in Section 109.23, Revised Code. I feel that this language is so strong and so clear and definite in connection with the facts in this case, that I have no alternative but to grant defendant McCurdy's Motion, even though the Court feels that the assistance of the Attorney Gen-

eral in the hearing of the matter of the construction of the Will would be invaluable.

In view of the language of Section 109.23, Revised Code, the Court feels that the arguments as to the common law rights and duties of the Attorney General in a matter of this nature must bow to the specific provisions of the statute.

The defendant McCurdy's Motion is therefore sustained, and the Attorney General is dismissed as a party to this action.

BAILY AND WAGGONER, CO-ADMINISTRATORS, PLAINTIFFS, *v.* McELROY, ATTORNEY GENERAL ET, DEFENDANTS.

No. 3433.   Decided June 19, 1962.

RAY, J. This matter came on to be heard on the Petition of Emmor D. Baily and Charles J. Waggoner, Co-Administrators With the Will Annexed of the Estate of Rice P. Steddom, deceased, for the construction of the Will of the late Rice P. Steddom.

It might be well at this point to give a brief history of the development of this entire case for the benefit of the record.

The Will of the late Rice P. Steddom was admitted to probate in this Court on April 26, 1950. At that time, Judge Ralph H. Carey, now deceased, was Probate Judge for this County. After said Will was admitted to probate, the following actions were filed.

On October 19, 1950, a suit was filed in the Court of Common Pleas, Case No. 19075, contesting said Will. On the same date, Case No. 19076 was filed in the same Court asking for a construction of the Will. The plaintiff in both cases was Francis T. McCurdy, alleged to be the sole heir at law of Rice P. Steddom, deceased.

The suit contesting the Will resulted in the Court of Common Pleas ordering the question of the validity of the Will being put in issue. A jury found that the Will was the Last Will and Testament of Rice P. Steddom. An Entry to this effect was filed on or about October 13, 1955.

The suit for the construction of the Will was dismissed, with prejudice, by the plaintiff, McCurdy, at the cost of the defendants, on October 13, 1955.

On that same date, Charles J. Waggoner and Emmor D. Baily, Administrators With the Will Annexed of the Estate of Rice P. Steddom, deceased, filed an application in the Probate Court of this County requesting authority from the Court to pay Francis T. McCurdy the sum of Fifty Thousand ($50,000.00) Dollars in settlement of his suits hereinbefore referred to. The Probate Court ordered the Administrators WWA to pay the sum of Fifty Thousand ($50,000.00) Dollars to Francis T. McCurdy and the suit to construe the Will was dismissed in the Court of Common Pleas.

No more action, with the possible exception of accounts filed by the Administrators WWA, resulted in this Estate until October 10, 1960. During that time, Judge Carey had passed away and the present Judge had assumed the Probate Bench.

On the 10th day of October, 1960, an Application was filed in the Probate Court by Francis T. McCurdy, seeking a construction of the Will of Rice P. Steddom. Notice was served on the Co-Administrators WWA and through their attorneys, C. Donald Dilatush and Marvin E. Young, a Motion to Quash Service was filed. The Court has never rendered a decision on that Motion, and the question has since become moot.

About that same time, the attorneys for the Co-Administrators WWA filed an action in the Court of Common Pleas of this County asking for construction of the Steddom Will. By agreement of all parties, this suit was subsequently dismissed and the Co-Administrators WWA through their attorneys brought the action for the construction of the Will in the Probate Court. This resume brings us to the present matter.

In order to give a proper construction to this Will, it is necessary for the Court to carefully examine all of the papers filed in this Estate, and there were many.

In the course of this examination, the Court found that the deceased not only had executed the Will here asked to be construed, but had also executed two Codicils to the said Will. Said Codicils and/or photostatic copies are on file in this Court. They are also referred to and set forth in various Briefs and Applications filed with this Court, by various Attorneys representing the various parties and sides in this matter. There can be no doubt that the deceased properly executed the said Codicils.

For the record, we are attaching to this Opinion and making a part of it photosatic copies of the original Will, the original First Codicil, and the original Second Codicil.

The Court is of the opinion that to properly construe the Will, it must be construed with the two Codicils in order that the real intent of the testator may be understood. Adams & Hosford Section 2107.01-6C, Revised Code.

As you will have noted from the reading of the two Codicils, the Second revoked the First.

Let us first look at the Will and First Codicil.

It is this Court's opinion from a careful reading of these two instruments that the testator, even though he called the latter instrument a ". . . First Codicil to my Last Will and

Testament dated January 24, 1930.''; he, in fact or in effect, executed a new Will.

Let us examine the several provisions of both instruments. Paragraph Two of the Will is revoked by ITEMS I, IV, and possibly V, of the First Codicil. Purposes First, Second, and Third are revoked by ITEM III of the First Codicil. In the Will, it is provided that the income from a trust fund be expended to do certain things. In the First Codicil, a now specific Trustee is directed to acquire by purchase the same property mentioned in the Will from the principal of the trust, and is authorized to expend in addition to the purchase price the sum of $15,000.00 of the trust principal for improvement of the property to be purchased.

The provisions of the First Codicil are entirely different from those of the Will except as to the description of the property. By reading the provisions of the Will and the provisions of the First Codicil, the Court is of the opinion that the provisions of the First Codicil supplanted the provisions of the Will as to the First, Second, and Third Purposes.

A specific provision of the First Codicil revoked the provision of the private trust under the Will for the income to go to decedent's brother and sister for life.

*Nelson* v. *Minton,* 187 N. E., 576; *Moller* v. *Warehome,* 30 O. N. P. (N. S.), 315.

The Fourth Purpose is also revoked by implication, omission, and ITEM V of the First Codicil. The First Codicil is so complete in its disposition and directions that this writer can reach no other conclusion than that the deceased deliberately omitted any reference to the said Fourth Purpose because he intended to revoke the same. This conclusion is further strengthened by the fact that ITEM III of the First Codicil allows said Trustee to expend a large portion of the principal, and such expenditure plus the upkeep of said premises would render the Fourth Purpose of the Will impossible of execution. Section 2107.33, Revised Code.

We must therefore conclude, whether you consider the First Codicil a Will or a Codicil, it had the effect of revoking the Will. Section 2107.38, Revised Code—Section 10504.54, General Code.

We now come to the Second Codicil—it very plainly and definitely revokes the First Codicil. Testator states: ''Since

said emergency has passed and it is now my wish to dispose of property in a manner differing from the terms of said Codicil, I hereby declare said Codicil to be null and void." Signed Rice P. Steddom.

There is no pretense here of republishing the first Will. There is not even any reference made to it, directly, indirectly, or otherwise, which also indicates that the testator felt that he had revoked the Will by the First Codicil. The Second Codicil, clearly and in no uncertain terms, revokes the First Codicil. Testator did more than this to effect the revocation. He erased his name and signature from said First Codicil, drew lines through the witnesses' names, and made a notation on the margin to the effect that the Codicil was revoked by another document.

*Collins* v. *Collins*, 110 Ohio St., 105, 143 N. E., 561; Bowe—Parker Revision of Page on Wills, Sections 21.43 and 21.17.

Other citations *In re Paulus*, 2800283; Bowe—Parker Revision of Page on Wills, Section 21.61; *Paully* v. *Crooks*, 41 App., 1, 173 N. E., 364.

Reference is herewith made to additional statutes, cases and texts, which also support the foregoing conclusions.

Section 10504-54, General Code, Section 2107.38, Revised Code, Section 10504-1, General Code, Section 2107.01, Revised Code.

"It is not necessary that the second instrument be probated in order that it may be in the contest of the First Will to show a revocation thereof."

Bowe—Parker Revision of Page on Wills, Section 21.38; *Collier* v. *Collier*, 30 S., 369; *Foye* v. *Foye*, 35 Ohio App., 283; *Jackson* v. *Shinnick*, 3 O. N. P., 211; *Kiester* v. *Kiester*, 76 Ohio Law Abs., 453; *Crane* v. *Tunkey*, 11 L. R., 454.

The only conclusion that can be reached from a review of the terms and conditions of the Will construed with the two Codicils is that the deceased died intestate, having revoked the First Will by the First Codicil, which in fact was a Will, and then subsequently having clearly revoked the First Codicil or Second Will by the Second Codicil.

The deceased was survived only by a nephew, Francis T. McCurdy, who would be entitled to inherit under the statutes of descent and distribution. Section 2105.06 (F), Revised Code.

Mr. McCurdy has two children. The said Francis T. McCurdy did, at the time the Will Contest and Will Construction were dismissd in the Court of Common Pleas, execute releases to the said Co-Administrators WWA in consideration of a $50,000.00 settlement. These releases, however, were executed in the belief that the First Will was the Last Will and Testament of the deceased. Had the Court or the Co-Administrators WWA gone forward as they should have and had the Will construed, in light of the evidence, documents, etc., in the files of the Court, we feel that no other decision could have been reached than the one reached here.

The Court therefore feels that said releases are invalid and not binding upon the defendant, Francis T. McCurdy, for the reason that they were executed under the mistaken belief that the First Will of the decedent was the Last Will, when in fact it was not, and when in fact the decedent had died intestate. If said releases were to be allowed to stand, they would have the effect of depriving defendant, Francis T. McCurdy, of what was legally and rightfully his at the time he executed said releases, or even worse, allowing the Estate to escheat, which the law will not allow except where there are absolutely no relatives of any description. Section 2105.06 (J), Revised Code.

Since the Briefs filed by the attorneys for the defendant, Francis T. McCurdy, and Co-Administrators WWA, Emmor D. Baily and Charles J. Waggoner, did not deal with the same matter on which the Court feels it must base its decision, it might be well to delve into their reasoning, even though this part of the Opinion be only dictum.

First, let us set forth the "Stipulation of Facts" filed by the attorneys for plaintiffs, Emmor D. Baily and Charles J. Waggoner, to-wit:

1. The sister and brother of the testator were deceased at the time of the death of Rice P. Steddom.

2. *That the graveyard in question in this suit is the Friends' graveyard in Turtlecreek Township, Warren County, Ohio, and is the same one purchased by the deceased, as permitted by order of the Warren County Common Pleas Court in a case filed by the Friends' Society for permission to sell said graveyard.* (Emphasizing by the Court.)

3. That both relatives of the deceased and many other

members of the Friends' Society are buried in said graveyard.

4. That the meeting house is a small building adjacent to said graveyard.

In the Application filed for the approval of the $50,000.00 settlement, by the Co-Administrators WWA, the following language appears:

"Counsel for the Administrators have examined the law and have analyzed the Will and have come to the conclusion that there is a strong probability that the trust is void, contrary to public policy, incapable of execution and violates the rule against perpetuities, and is not of a charitable nature.

"The Administrators, through their counsel, are of the opinion that the Petition to construe the Will would probably be sustained and the trust probably held null and void under such circumstances."

Elsewhere in the same Application, we find the following language:

"Your Administrators further state, through their counsel, that they are of the opinion that the trust attempted to be created is probably not of a charitable nature and is a perpetuity."

"We wish to call the Court's attention to *Dirlam, Ex.,* v. *Morrow,* 102 Ohio St., 279."

Here the Application sets forth some of the language of the Supreme Court's Opinion, which held the trust in that case to be void because it was so vaguely defined and indefinite.

Various other citations are set forth in the Application of the Co-Administrators WWA—all adopting the position that the trust attempted to be created was probably void.

It is apparent that in view of Stipulation No. 2 and other evidence in the Court's records that at the time of death of decedent, he owned the graveyard, and that Purposes First, Second and Third of the perpetual trust would therefore violate the rule against perpetuities. The decedent, Rice P. Steddom, owned the graveyard and meeting house at the time of his death. An ancient meeting house of no further value or benefit to the religious order that built and inhabited it is not clearly a legacy that will benefit the public or society generally. The attaching of the farm to the remote contingent charitable possibilities of the Fourth Purpose does nothing to change the

private aspects of the Home Place. The Court cannot see that the Third Purpose could result in any greater public benefit than the transferring of title of the property into the name of a trustee. The possible perpetuation of a small ancient private graveyard would seem to have so slight a tendency toward the uplift of man as to place it outside the realm of charitable trusts. Further, the financial status of the estate is not capable of achieving the ambitious objectives of the Will with regard establishing and maintaining a memorial of sufficient asthetic quality to benefit the public at all.

The provisions for a trust are vague. The first two purposes are at best a mixture of private and charitable purposes. The Third Purpose is wholly a private purpose. The Fourth Purpose is of a charitable nature, but vague and uncertain of fulfillment. The Restatement of the Law of Trusts—Section 375 A—states that a trust is not charitable in nature if the class is not large enough or definite enough to make enforcement of the trust a sufficient benefit to the community, or is so small that the community is not interested in its enforcement. The facts in the instant case prove beyond the remotest doubt that there is no interest in this community in enforcing said purported trust. In almost twelve years, there is no evidence or record of any community interest or attempts on the part of the community in general or possible beneficiaries to enforce said trust.

If a trust is for charity and certain other purposes of an indefinite sort, which may have been intended by the settlor to be charitable or may have been intended to be for private benefit, and there is no basis for separation of the trust capital, the whole trust may fall for uncertainty.

Bogert on Trust, Page 286.

The Court's conviction that the trust must fail for vagueness and uncertainty is re-enforced by *Dirlam* v. *Morrow*, 102 Ohio St., 279, and by the memorandum of the Co-Administrators WWA filed in October of 1955, which reads in part as follows:

"Since his acquirement of these properties the trust would be of a private nature and not of a public charitable trust nature.

"The income from the corpus of the trust would be entirely

disproportionate to the amounts necessary or required to carry out the four (4) purposes mentioned in the Will.

"... the rule against perpetuities ... is probably violated."

The Court feels it must concur in the Opinion of the Co-Administrators WWA and would hold the trust null and void.

The Court only regrets that the Co-Administrators WWA waited so long in seeking this Will Construction. Their delay in performing their duties has prolonged the settlement of this Estate approximately seven years.

As the Court said hereinbefore, we feel that this part of the Opinion pertaining to the charitable trust question is nothing but dictum in view of our Opinion that the decedent actually died intestate.

It is therefore the finding of this Court that Rice P. Steddom died intestate, leaving as his only heir under the statute of descent and distribution the defendant, Francis T. McCurdy.

It is therefore the order of this Court that the Co-Administrators WWA distribute according to law the balance of the assets of the Estate of Rice P. Steddom, deceased, to the defendant, Francis T. McCurdy, and make a final accounting to this Court.

### Exhibit A

#### LAST WILL AND TESTAMENT.

I, Rice P. Steddom, of Lebanon, Warren County, Ohio, being of sound and disposing mind, memory and understanding, and mindful of the uncertainty of life, do make, publish and declare the following as and for my Last Will and Testament, hereby revoking any and all former wills by me at any time heretofore made.

I will and direct the prompt payment of all my just debts and funeral expenses and that immediately after said payment is accomplished all of my property, real, personal, and mixed, shall be placed and thereafter held in trust where said property, and the income therefrom, will be judiciously and wisely administered, and the said income promptly disbursed to my sister Laura S. Dunham of Lebanon, Ohio, and my brother Francis W. Steddom of Los Angeles, Cal., each said sister

and said brother sharing alike in said income so long as both shall live, and in the event of the death of either said sister or said brother, then and thereafter the entire income from said property shall go to the survivor either said sister or said brother, so long as he or she shall live.

Upon the death of both said sister and said brother, then and thereafter the entire income from said property shall be expended for the purposes and in the order of preference as follows:

*First Purpose*: In perpetuating, caring for and beautifying the Turtle Creek Graveyard in Turtle Creek Township, Warren County, Ohio, and any enlargement thereof, in memory of those who are buried there and for the benefit of succeeding generations.

*Second Purpose*: In preserving the Turtle Creek Meeting House and beautifying the grounds thereof adjoining the said Turtle Creek Graveyard as an adjunct to the First Purpose above cited.

*Third Purpose*: In keeping in repair, preserving and improving the buildings and land of the 42.54 acres located in Warren County, Turtle Creek Township, Ohio, now recorded in my name, and assessed as Lot or Survey 448 and known as the Home Place, as an adjunct to the Fourth Purpose below stated.

*Fourth Purpose*: After the First, Second and Third Purposes as above stated are accomplished for the year which is then current, or if for any lawful reason any one or more of said Purposes cannot be so accomplished, then and in that event all remaining income from said property for said year shall be expended in helping to educate worthy young men and/or worthy young women in Veterinary Science and/or General Sanitation. The applicants as beneficiaries under the provisions of this Fourth Purpose shall be selected in the order of nearness of their legal residence to the said Home Place.

The said property and the income derived therefrom shall be designated and ever known as the Narcissa Price Steddom Fund in memory of my Mother.

It is my wish that the Court having jurisdiction shall duly designate the trust organization which shall act as administrator and trustee of my estate.

In Witness Whereof, I have hereunto set my hand and seal at Washington, District of Columbia, and acknowledged, published and declared this to be my Last Will and Testament on this the twenty-fourth day of January, in the Year of Our Lord, one thousand nine hundred and thirty.

Rice P Steddom

SEAL.

Signed, sealed, acknowledged, published and declared by Rice P. Steddom, the above-named testator as and for his Last Will and Testament in our presence and signed by us as witnesses at his request, in his presence and in the presence of each other at Washington, District of Columbia, on this the twenty-fourth day of January, in the Year of Our Lord, one thousand nine hundred and thirty.

| Frederick W. Mayst | 3509 Idaho Ave N. W. Wash D. C. |
| Victor H. Schorn | 714 Allison Street N W |
| | Washington, D. C. |
| Raymond C. Weber | 209 St. Joseph St. Easton, Pa. |

I,                    , of Lebanon, Warren County, Ohio, do hereby make, publish, and declare this as a First Codicil to my Last Will and Testament dated January 24, 1930.

ITEM I. I direct that my body shall be cremated and the ashes buried beside the grave of my wife in Turtle Creek Graveyard in Turtle Creek Township, Warren County, Ohio, and that a granite marker be erected over my ashes, which marker shall bear my name, "Rice Price Steddom," and the year of my death.

ITEM II. I bequeath to Pearl and Emmor Baily the sum of Five Thousand ($5000.00) Dollars in recognition of services rendered me during my life, and, if either should die prior to my death, said sum shall be paid to the survivor.

ITEM III. I hereby direct that my Trustee herein named

shall acquire title to the Turtle Creek Meeting House, provided the same can be purchased at a price that seems reasonable to my Trustee and to pay for the same out of the principal of the Trust Estate; and I further direct that said Turtle Creek Meeting House and the farm described in my Will shall be maintained as a public park, in order to preserve said Meeting House for historic purposes, with the understanding that the house on said farm, together with the other farm buildings adjoining the house, and a tract not to exceed five (5) acres, shall be fenced off and used as a residence by the caretaker who will from time to time be employed by my said Trustee to care for the park and Meeting House. I further direct that my said Trustee may, as soon after my death as it deems it advisable, use a sum, not exceeding Fifteen Thousand ($15,-000.00) Dollars, from the principal of the Trust Estate for the purpose of placing the Meeting House, the farm, and the buildings on the farm in first-class condition and well fitted for use as a public park.

ITEM IV. In view of the fact that my sister, Laura S. Dunham, and my brother, Francis W. Steddom, are both deceased, I hereby revoke that part of my Will which bequeaths to them the income of the Trust Estate during their lives and the life of the survivor of them.

ITEM V. I hereby appoint The Fifth Third Union Trust Company, of Cincinnati, Ohio, as Trustee to carry out and execute the trusts set forth in my Will as amended hereby; and I direct that it shall not be required to give bond to secure the faithful performance of its duties as such Trustee. I hereby give and grant to my said Trustee full power and authority to sell, transfer, or exchange all or any part of the property at any time held by it hereunder at such prices and upon such terms and conditions and in such manner as it may deem best; to execute and deliver any contracts, conveyances, leases, agreements, proxies, powers of attorney, or other instruments in writing that my said Trustee may deem necessary or advisable in administering said estate; to invest and reinvest money coming into its hands in such loans, stocks, securities, or ground rents as it may deem proper and suitable for the investment of trust funds, irrespective of any statutes or rules or practices of Chancery Courts now or hereafter in force

limiting the investments of Trust Companies or Trustees generally, with power to vary or transpose investments so made into others of like or similar nature, it being my intent that my said Trustee shall have unrestricted power to manage all the property held by it hereunder as if the absolute owner thereof. I further direct that in case of sales made by my said Trustee hereunder, the purchaser shall not be required or concerned to inquire as to the disposition of the proceeds, but shall be fully released by receipt signed by my said Trustee, and all powers granted my Trustee shall be exercised by it without any Order of Court.

ITEM VI. I hereby nominate and appoint The Fifth Third Union Trust Company, of Cincinnati, Ohio, as Executor of my Last Will and Testament as herein supplemented, and direct that it shall not be required to give bond to secure the faithful performance of its duties as such Executor, and I hereby give and grant unto my said Executor, all and singular, the powers and privileges hereinbefore given and granted to my said Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand, at Lebanon, Ohio, on this 8th day of August, 1945.

---

Signed by the said                   who at the same time published and declared the same as and for a Codicil to his Last Will and Testament dated January 24, 1930, in the presence of us, who, in his presence and in the presence of each other, and at his request, have hereunto subscribed our names as witnesses, at Lebanon, Ohio, this 8th day of August, 1945.

.............................. residing at Lebanon, Ohio
.............................. residing at Lebanon, Ohio
.............................. residing at Lebanon, Ohio

This Codicil is annuled by document executed on July 20-1946
R. P. Steddom

Received 11-15-46
R. P. S.

*Exhibit "B"*

In the emergency of my sudden illness a first Codicil to my last will was drawn and signed on the Eighth day of August 1945. Since said emergency has passed and it is now my wish to dispose of property in a manner differing from the terms of said Codicil, I hereby declare said Codicil to be null and void.

Rice P Steddom

(Seal)

Signed by Rice P Steddom in our presence and signed by us as witnesses at his request, in his presence and in the presence of each other at Summit Farm, Lebanon Ohio on July 20-1946.

B. B. Ellenberger 1359 Parkwood Place N. W. Washington, D. C.
Mrs S. B. Buty        4240 Fergus St.        Cincinnati Ohio
Grover Sibler        1624 Clarewood Ave        Cincinnati Ohio

## MANDATE FROM COURT OF APPEALS
Judgment Affirmed

No. 3433        General Code, Sec. 12223-40

C. Doc. 7-Pg. 96        ————::————        Mar-8 1962

The State of Ohio, Warren County        Court of Appeals

January *Term, A. D. 1962*

*At a Term of the Court of Appeals, within and for said County, begun and held at* Lebanon *on the* 2nd *day of* January *1962, before* Hon. Bert Long, *Presiding Judge, and* Hon. ................., *and* Hon. ................., *Judges, among other proceedings then and there had by and before said Court, as appears by its Journal, is the following, to-wit:*

Emmor D. Baily and Charles)        March 8, *1962*
J. Waggoner, Co-Administrators)
with the will annexed of the)        *No. 260*
Estate of Rice P. Steddom,)
Deceased, Appellees        )
            *vs.*            )        JUDGMENT AFFIRMED
Mark McElroy, Attorney General)
of the State of Ohio Appellant)
Francis T. McCurdy, Appellee)

*The said parties appeared by their Attorneys, and this cause came on to be heard upon the Notice of Appeal of the said* Mark McElroy, Attorney General of the State of Ohio *Appellant..herein, together with a transcript of the docket or journal entries of the Court of* Probate *of* Warren *County, Ohio, and such original papers, or transcripts thereof, as were necessary for said appeal, filed therewith in the said*.................. *wherein* Emmor D. Baily and Charles J. Waggoner, Co-Administrators with the Will annexed of the Estate of Rice P. Steddom, Deceased, *Plaintiff..and* Mark McElroy, Attorney General of the State of Ohio........................, Defendant..., *mentioned and referred to in said Notice of Appeal, and was argued by counsel: Upon consideration whereof, the Court finds that there is no error manifest upon the face of the record in said orders and judgment of said Court of Common Pleas, and in its opinion, substantial justice has been done to the party complaining, as shown by the record of the proceedings, and the judgment under review.*

It is thereupon considered, ordered and adjudged by this Court, *that the judgment and proceeding of the said* Probate Court *in said*..................*in favor of the said Appellee.. and against the said Appellant..be, and the same are hereby, in all things affirmed; there being however, in the opinion of the Court, reasonable ground for this proceeding.*

It is further considered and ordered, *that the Appellant.. pay the costs of this proceeding, taxed at $21.39, and in default thereof, that execution issue therefor.*

It is further ordered *that a special mandate be sent to the* Probate Court *of* Warren *County, to carry this Judgment*..... *into execution.* ........................................

<div style="text-align:right">

Long<br>
Presiding Judge

</div>

———— :: ————

*I,* C. C. Beckett, *Clerk of the Court of Appeals of* Warren *County, Ohio, do hereby certify that the foregoing entry is truly taken and correctly copied from the Journal of said Court of Appeals.*

*WITNESS my hand and the seal of said Court at* Lebanon, *Ohio, this* 8 *day of* Mar *1962*

<div align="right">

C. C. Beckett

*Clerk*

By ..................

*Deputy*

</div>

———— :: ————

The State of Ohio, Warren County.     Court of Appeals

TO THE HONORABLE PROBATE COURT,

Within and for the County of Warren Ohio:

*We hereby command you that you proceed without delay, to carry into execution the within and foregoing judgment of our Court of Appeals of* Warren *County, in the case of* ......
Emmor D Baily and Charles J Waggoner, Co-Administrators with the Will annexed of the Estate of Rice P. Steddom, Deceased

<div align="center">

*vs.*

</div>

Mark McElroy, Attorney General of the State of Ohio Appellant Francis T. McCurdy,      -Appellee

*the Notice of Appeal herein and heretofore filed to the contrary notwithstanding.*

*WITNESS my signature as Clerk of our said Court of Appeals, and the seal thereof, this* 8 *day of* May *1962*

<div align="right">

C. C. Beckett

*Clerk*

By ..................

*Deputy*