**Oliver v. Bank One, Dayton, N.A. Case No. 11817**

**Montgomery County, (2nd) Decided January 31, 1990**
[Cite as 1 AOA 78]

*Robert F. Jefferis, 2027 Far Oaks Building, 2801 Far Hills Avenue, Dayton, OH 45419; Attorney for Plaintiff-Appellant,*

*William B. Elliot, 8900 North Main Street, Dayton, OH 45415, Attorney for Defendant, Bank One, Dayton, N.A.*

*Thomas H. Graber, II, and Roger L. Hurley, 507 South Broadway, Greenville, OH 45331; Attorneys for Defendant-Appellant Charles D. Hopper, Executor,*

*C. Terry Johnson, David M. Rickert, and Deborah D. Hunt, 2000 Courthouse Square, P.O. Box 8801, Dayton, OH 45401, Attorneys for Defendants-Appellees*

FAIN, J.

The issue in this case, as framed by the trial court, is "* * * whether legacies to legatees not related by blood to the testator who predeceased the testator, lapse or pass to their issue * * * pursuant to R.C. [2]107.52 or otherwise." The trial court found that because the bequests in question were made to persons who were not blood relatives of the testator, the bequests failed and became part of the residue of the estate, absent any language that could save the bequests. Defendant-appellant Charles D. Hopper argues that the trial court erred by failing to construe the will and find the true intent of the testator--the true intent being that the bequests should not have lapsed. We conclude that the trial court did, in fact, construe the will. However, we further conclude

that under the peculiar facts of this case, the trial court's construction of the testator's intent as expressed in the will is erroneous. Accordingly, the judgment of the trial court will be reversed, and, pursuant to App. R. 12(B), this court will enter a declaratory judgment that the bequests to Mae Reed and Walter M. Shiverdecker did not lapse at their deaths, respectively.

## I

On September 26, 1966, James F. and Edna Irene Shiverdecker executed reciprocal wills containing identical provisions. The wills provided that upon the death of the first spouse, the surviving spouse would inherit the entire estate. Upon the death of the surviving spouse, certain named beneficiaries would inherit the estate.

Mr. Shiverdecker predeceased his wife, thus leaving Mrs. Shiverdecker with the entire estate. Mrs. Shiverdecker died in 1987. In pertinent part, Mrs. Shiverdecker's will provided that:

* * * I direct that all the rest, residue and remainder of my estate * * * be converted into cash money * * * and be divided into one hundred (100) equal parts or shares and I, then, give and bequeath to my *relatives* hereinafter (100) equal parts or shares and I, then, give and bequeath to my *relatives* hereinafter named, said equal parts or shares in proportions hereinafter set after each name, viz:

(1) To my nephew, WILLIAM H. REI-MULLER * * * twenty-six (26) such equal parts or shares * * * .
(2) To my husband's sisters, (Mrs.) MAE REED * * * twenty-three (23) such equal parts or shares * * *.
(3) To my husband's sister, OSIE S. BAIR * * * twelve (12) such equal parts or shares * * * .
(4) To my husband's sister, RUTH WOLF-GANG * * * twelve (12) such equal parts or shares * * * .
(5) To my husband's brother, WALTER M. SHIVERDECKER * * * four (4) such equal parts or shares * * * .
(6) To The Winters National Bank and Trust Company of Dayton, Ohio, twenty-three (23) such equal parts or shares, to Hold in Trust * * *
(a) To distribute the net income from the

trust property to my husband's sister, MARY PLESSINGER
* * *.
(b) If upon my husband's sister's decease before said fund is exhausted, or if she predeceases me in death, the said fund or remainder of said trust shall be paid over and distributed to her daughters * * *:
To WANDA BAIR * * * two-thirds (2/3) of said trust fund * * * and
To DONNA MARIE WILLIAMS * * * the remaining one-third (1/3) of said trust fund * * *. (Emphasis added.)

Of the named residuary beneficiaries, Mrs. Shiverdecker was predeceased by her sister-in-law Mae Reed, her brother-in-law Walter M. Shiverdecker, and her sister-in-law Mary Plessinger. Mrs. Shiverdecker's will was admitted to probate. Thereafter, plaintiff-movant Laura E. Oliver, the daughter of Walter M. Shiverdecker, filed a complaint in the trial court seeking construction of Mrs. Shiverdecker's will. Hopper, the executor of the estate of Mae Reed's daughter, LaVaunn Hopper, filed a cross- claim also seeking construction of Mrs. Shiverdercker's will. Both Oliver and Hopper argued that the bequests to Walter M. Shiverdecker and Mae Reed should not lapse, pursuant to R.C. 2107.52,[1] the "anti-lapse" statute, because Mrs. Shiverdecker's reference to them as "relatives" indicated that she intended the bequests *not* to lapse.

In its decision, the trial court found that an "in-law" is not a relative under the anti-lapse statute. The court held that the term "relative," as used in the anti-lapse statute, is limited to those persons who are related to the testator by consanguinity an does not include those persons related by affinity.

From the judgment of the trial court, Hopper appeals.

## II

Because both of Hooper's Assignments of Error are related, we will address them together. Hopper's First and Second Assignments of Error are as follows:

FIRST ASSIGNMENT OF ERROR

THE PROBATE COURT ERRED WHEN IT FAILED TO CONSTRUE THE LAST WILL AND TESTAMENT OF EDNA IRENE SHIVERDECKER AND

DETERMINE THE INTENT OF THE TESTATOR.

SECOND ASSIGNMENT OF ERROR

IN FAILING TO CONSTRUE THE WILL AND FINDING SOLELY THAT THE OHIO ANTI-LAPSE STATUTE, O.R.C. SECTION 2107.52 DID NOT APPLY, THE PROBATE COURT DID NOT DETERMINE THE INTENT OF THE TESTATOR, WHICH WAS TO PROVIDE FOR THE ISSUE OF ANY RESIDUARY BENEFICIARY WHO PREDECEASED THE TESTATOR SINCE THE TESTATOR DIRECTED SUCH PERSON NAMED IN HER WILL BE CONSIDERED HER "RELATIVES".

Essentially, Hopper argues that: 1) the trial court failed to construe the will and determine the intent of Mrs. Shiverdecker; and 2) had the trial court determined Mrs. Shiverdecker's intent, it would have found that her use of the term "relative" was intended to prevent the lapse of the residuary bequests at issue in the case before us. We agree with Hopper in part, and disagree with him in part.

With regard to Hopper's first argument, we conclude that the trial court did, in fact, construe the provisions of Mrs. Shiverdecker's will. In the final paragraph of its Decision and Entry, the trial court provided that "[Shiverdecker's residuary] bequest is absent any language that could save the bequest, there being no substitute legatee or saving language, and therefore, the bequest fails and the bequest becomes part of the rest and residue of the state." This language indicates to us that the trial court reviewed the provisions of Mrs. Shiverdecker's will and found that because there was "no substitute legatee or saving language" the intent expressed by Mrs. Shiverdecker was that the residuary bequest would not be prevented from lapsing. However, due to the reasons set forth below, we conclude that the trial court's construction of Mrs. Shiverdecker's will was erroneous.

Hopper's First Assignment of Error is overruled.

With regard to Hopper's Second Assignment of Error, we conclude that the particular facts of this case clearly manifest the testator's intent that the bequest to her in-laws not lapse and that the trial court should have construed the will accordingly.

The wills drafted by Mr. and Mrs. Shiverdecker were reciprocal wills. Both wills were drafted and executed at the same time, and both wills contain identical provisions.

In Item III of both wills, Mr. and Mrs. Shiverdecker provide for the distribution of their residuary estate to their "relatives." Of all the "relatives" listed, only one is a blood relative of Mrs. Shiverdecker. The remaining residuary beneficiaries are the blood relatives of Mr. Shiverdecker. Nevertheless, the residuary beneficiaries are treated identically in each of the Shiverdeckers' wills. There is no differentiation between the wills as to the share that a "relative" is to receive. We conclude that such treatment of the residuary beneficiaries indicates an intent on the part of the Shiverdeckers to treat *all* residuary beneficiaries in the *same* manner, whether they are blood relatives or not. There is no apparent reason to suppose that the Shiverdeckers, at the time they executed their identical wills, intended that a different result should obtain at the survivor's death, depending upon the order of their deaths. Yet that is precisely the result that would obtain, should this court adopt a contrary construction of their wills. If the wills were construed as the appellee urges, then Mr. Shiverdecker's blood relatives, but not Mrs. Shiverdecker's blood relatives, would be exposed to the possibility of the lapse of their bequest if he should die first. However, if Mrs. Shiverdecker were the first to die, then her blood relatives would exposed to the possibility of the lapse of their bequest, but not Mr. Shiverdecker's blood relatives.

We simply cannot reconcile the existence of such a testimonial intent on the part of the Shiverdecker with their execution of identical wills, on the same day, with a common term, "relatives," denoting relatives on both sides of the family. From all of the circumstances, it is clear that no such disparity of results was intended to depend upon the order of death of the testators. Accordingly, it is our conclusion that Mrs. Shiverdecker did not intend for the gifts to her "in-laws" to lapse.

Counsel for defendants-appellees argues that because only one of the six residuary bequests included language that expressly prevented the lapse of the gift, it must be presumed that the remaining residuary bequests were intended to lapse. We disagree. As noted at oral argument, the residuary bequest that included an express savings provision was the bequest that established a trust. Due to the

nature of such a bequest, it was necessary for the testator to include "saving language" in case the trust were to fail, for whatever reason. Since the remaining residuary bequests did not establish trusts, such language was not included. Under the facts in this case, we are not persuaded by the argument that because only one bequest included a savings provision, the other bequests must have been intended to lapse.

Counsel for defendants-appellees also argues that even where a testator refers to a legatee as a "blood relative", when in fact that person is related to the testator only by marriage, R.C. 2107.52 does not save the bequest from lapsing. Counsel cites *Kegler v. Kempter* (1942), 74 Ohio App. 279, and *Kovar v. Kortan* (1965), 3 Ohio Misc. 63, in support of his argument. We agree with counsel that *Kegler, supra,* and *Kovar, supra,* stand for the stated proposition of law. However, we find the facts in those cases to be distinguishable from the facts in the case before us. In our case, the wills that the Shiverdeckers drafted and executed were reciprocal wills with identical provisions. The fact that the Shiverdeckers executed identical wills indicates that the residuary beneficiaries were to be treated in an identical manner, regardless of which spouse happened to predecease the other. In neither *Kegler, supra,* nor *Kovar, supra,* do we find that crucial fact.

Finally, counsel for defendants-appellees argues that in the area of probate law and estate planning, there is an exceptionally strong need for "bright-line" tests. Counsel contends that courts must be consistent in their holdings to allow practitioners and clients to plan and to draft estate documents. We agree with counsel that " bright-line" tests are important in this area of the law. However, all of the "bright-line" rules for the construction of wills, whether of statutory or common law origin, have as their underlying purpose the implementation of a testator's manifest intent. *Townsend's Executors v. Townsend* (1874), 25 Ohio St. 477. Where, as here, the intent of the testator is clear, it must be given effect. Therefore, under the peculiar circumstances of the case before us, we conclude that a new rule must be established to implement the testator's intent under the peculiar circumstances of this case.

The new rule that we adopt can be stated as follows: Where a husband and wife execute identical reciprocal wills at the same time, each

bequeathing everything to the other, but, in the event that the spouse does not survive the testator, leaving bequest to certain blood relatives of either or both of them in identical proportions, it will be presumed that their intent was that all bequests to the blood relatives of either of them should not lapse upon the relative's pre-deceasing the surviving testator, unless a contrary intent expressly appears in the text of the wills.

Hopper's Second Assignment of Error is sustained.

### III

Hopper's Second Assignment of Error having been sustained, the judgment of the trial court will be reversed. Pursuant to App. R. 12(B), this court will enter the declaratory judgment that the trial court should have entered--that the bequests to Mae Reed and Walter M. Shiverdecker did not lapse at their deaths, respectively. This cause will be remanded to the trial court for further proceedings consistent with this opinion.

WILSON and BROGAN, JJ. concur.

---

[1] R.C. 2107.52 provides that:

When a devise of real or personal estate is made to a relative of a testator and such relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, such issue shall take the estate devised as the devisee would have done if he had survived the testator. If the testator devised a residuary estate or the entire estate after debts, other legacies and devises, general or specific, or an interest less than a fee or absolute ownership to such devisee and relatives of the testator and such devisee leaves no issue, the estate devised shall vest in such other devisees surviving the testator in such proportions as the testamentary share of each devisee in the devised property bears to the total of the shares of all of the surviving devisees, unless a different disposition is made or required by the will.